IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LAURA JEANNETTE DICKSON,                          Case No. 3:15-cv-00740-AA
                                                  OPINION AND ORDER
          Plaintiff,

     v.

CAROLYN COLVIN, Acting
Commissioner of Social Security,

          Defendant.
_____

Sarah L. Gabin
Sara L. Gabin, PC
14523 Westlake Drive
Lake Oswego, OR 97035-7700
          Attorney for plaintiff

Janice E. Hébert
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

Gerald J. Hill
Special Assistant United States Attorney
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075
          Attorneys for defendant

AIKEN, Judge:

Plaintiff Laura Jeannette Dickson brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Title II disability insurance benefits under the Act. For the reasons explained below, the Administrative Law Judges's ("ALJ") decision is reversed and remanded for further proceedings.

## BACKGROUND

Born March 13, 1962, plaintiff was 48 years old on the alleged disability onset date of October 1, 2010. Tr. 145. Plaintiff has an eleventh grade education and never earned a GED. Tr. 165. She has worked as the owner of a coffee shop, a general manager of a fitness club, a sales associate at a furniture decor and design store, and a swim instructor. Tr. 128-30, 275, 335.

Plaintiff alleges she was disabled from October 1, 2010 through March 2015.[1] Plaintiff states she suffered from stabbing pelvic, abdominal, and rectal pain with defecation. Tr. 49-51, 53, 60, 117, 207, 217, 299, 309, 383, 386, 391, 455, 462, 584. Plaintiff alleges these symptoms began in 2003 and increased after a hysterectomy in 2005. Tr. 214, 391, 421. In 2007, plaintiff exhibited symptoms of stomach pain, constipation, and blood in her stool and was diagnosed with mild superficial chronic gastritis and a slow transit colon. Tr. 348-56. In 2012, plaintiff was diagnosed with rectocele[2] and enterocele[3], which cause severe pelvic floor and defactory dysfunction. Tr. 207,

---

[1]Plaintiff initially sought an open period of disability. After the ALJ rendered the decision, plaintiff filed a motion to supplement the record. In March 2015, plaintiff underwent a successful surgical procedure that corrected her condition and abated her symptoms sufficiently to resume employment. Plaintiff now seeks a closed period of disability.

[2]Rectocele "occurs when the thin wall of fibrous tissue (fascia) that separates the rectum from the vagina weakens, allowing the vaginal wall to bulge."

Page 2 - OPINION AND ORDER

214-15, 462, 507.    At the time she applied for disability benefits, plaintiff alleges she always had

to be in close proximity to a toilet because the urge to defecate occurred at unpredictable times.    Tr.

51-52, 54, 57, 109, 217, 310, 315, 336, 394, 462, 583, 692.    Plaintiff alleges she would need to visit

the bathroom several times during the day, spending up to one hour at a time attempting to defecate.

Tr. 336.    Plaintiff explains she could not use a public bathroom because of the need to get down on

all fours to assist in proper positioning of her intestines and rectal area.    Tr. 336.    Plaintiff also

alleges she experienced chronic diarrhea that caused frequent seepage but little stool removal.    Tr.

112, 319, 584.    As a consequence of these bowel disorders, plaintiff alleges she developed anxiety.

Tr. 153, 208, 210, 376.    Plaintiff also alleges she lost her last job because she required so many

bathroom breaks.    Tr. 72-75, 358, 383, 391.

On August 15, 2011, plaintiff applied for disability insurance benefits.    Tr. 145, 262.

Plaintiff was represented by counsel and testified at a hearing on June 19, 2013.    T. 235.    The ALJ

found plaintiff not disabled.    Tr. 21.    The Appeals Council denied plaintiff's request for review,

rendering the ALJ's findings the final agency decision.    Tr. 1-6, 37.    Plaintiff subsequently filed this

appeal.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards

and the findings are supported by substantial evidence in the record.    42 U.S.C. § 405(g); *Berry v.*

---

http://www.mayoclinic.org/diseases-conditions/rectocele/basics/definition/con-20027826 (visited May 4, 2016.)

[3]Enterocele "occurs when the small intestine (small bowel) descends into the lower pelvic cavity and pushes at the top part of the vagina, creating a bulge." http://mayoclinic.org/diseases-conditions/enterocele/basics/definition/con-20025707 (visited May 4, 2016.)

*Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  Substantial evidence is "more than a mere scintilla but

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014)

(internal quotation marks omitted).  The court must weigh "both the evidence that supports and the

evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir.

2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation

is rational.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The initial burden of proof rests upon the plaintiff to establish disability.  *Howard v. Heckler*,

782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the plaintiff must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which . . . has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner employs a five-step

sequential process to determine whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987); 20 C.F.R. § 404.1520.

At step one, the ALJ determined plaintiff had not engaged in "substantial gainful activity"

since the alleged disability date.  Tr. 23.  At step two, the ALJ evaluated whether the plaintiff had

a "medically severe impairment or combination of impairments," and determined plaintiff's anxiety

disorder was a severe impairment.  *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c).  The ALJ

acknowledged evidence of pelvic floor dysfunction but deemed this impairment non-severe.  Tr. 23.

The ALJ found rectocele and enterocele were not medically determinable because they were

diagnosed after plaintiff's date last insured.  Tr. 23.  At step three, the ALJ determined plaintiff's

Page 4 - OPINION AND ORDER

impairments separately and in combination did not meet or equal any of the listed impairments "that

the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Tr. 24;

*Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d).    At step four, the ALJ determined plaintiff

retained the residual functional capacity ("RFC") to perform past relevant work as a coffee maker.

Tr. 30; 20 C.F.R. § 404.1520(f).  At step five, the ALJ determined plaintiff could perform other work

existing in significant numbers in the national and local economy, such as packager and industrial

cleaner. Tr. 31; *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g).  Accordingly, the ALJ found

plaintiff not disabled.  Tr. 32.

## DISCUSSION

Plaintiff argues the ALJ committed harmful legal error by (1) failing to supply clear and

convincing reasons for finding plaintiff not credible; (2) failing to give controlling weight to the

reports of two treating physicians, Dr. Kinsman and Dr. Osmundsen; (3)  failing to include  pelvic

floor dysfunction, rectocele and enterocele as severe impairments; and (4) improperly formulating

the RFC.

*I.    Plaintiff's Credibility*

Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting her

testimony concerning the severity of her symptoms.  When a claimant's medically documented

impairments reasonably could be expected to produce some degree of the symptoms complained of,

and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's

testimony about the severity of her symptoms only by offering specific, clear and convincing reasons

for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996).  The reasons proffered must

be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In evaluating the claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting *Smolen,* 80 F.3d at 1284). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In this case, the ALJ found plaintiff was malingering. *See* Tr. 28 (citing "evidence of manipulation and staging"); Tr. 29 (finding "extreme exaggeration and misreporting"). The ALJ provided several reasons that arguably could support a finding plaintiff was less than candid in her testimony. First, the ALJ noted plaintiff failed to follow pre-procedure instructions not to take laxatives before a clinical test, then disclosed her non-compliance only after the test results came back as normal. In evaluating the claimant's testimony the ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen,* 80 F.3d at 1284). The ALJ considered plaintiff's belated disclosure she had taken laxatives a "pretext to discredit a study that failed to show the alleged impairments." Tr. 28. Plaintiff testified she ignored her doctor's instructions and took laxatives before the procedure because it was too painful to go without using laxatives for four days. Tr. 96. This is one plausible explanation for plaintiff's non-compliance. However, because it is not the only possible explanation, it was permissible for the ALJ to question plaintiff's credibility on this ground.

Second, the ALJ found plaintiff's symptom testimony not credible because of a poor work history in the 13 years before the alleged onset date of October 2010. Tr. 26. An ALJ may reasonably conclude that poor work history diminishes the credibility of symptom testimony.

*Thomas v. Barnhart,* 278 F.3d at 959. Plaintiff explained her limited work history by stating she was the co-owner of a business with her ex-husband from 1996 to 2007 but because of tax purposes she was not listed on the documentation to show her ownership. Tr. 335. Plaintiff also claims she lost her job at the gym because of her constant need to go to the bathroom. Tr. 336. As with the laxatives, these are plausible explanations for plaintiff's work history, but they are not the only reasonable explanations. The ALJ permissibly questioned whether plaintiff did in fact work as the co-owner of the coffee business, as plaintiff only provided this explanation after being asked about her thin work history. Because plaintiff's prior work history may be interpreted to suggest her inability to work may not stem from her alleged disability, the ALJ permissibly relied on that history to discredit plaintiff's testimony.

Next, the ALJ found a conflict between plaintiff's statements that she could not work because of her frequent need to use the bathroom and her efforts during the period of alleged disability to look for restaurant work, a type of work that would be at odds with her alleged limitations. Tr. 26. An ALJ may discount a claimant's testimony because other assertions by the claimant contradict the testimony. *Thomas,* 278 F.3d at 958-59. Plaintiff submitted certifications that she was looking for restaurant work during the alleged disability period in order to obtain unemployment benefits. Plaintiff claims she was applying for part-time work and she felt that restaurant work would be flexible enough for her to take breaks when necessary. Yet again, the ALJ was not compelled to accept this explanation. Here, the ALJ reasonably found plaintiff's actions of applying for jobs inconsistent with her claim that she could not work due to her claim of disability.

However the ALJ also discredited plaintiff's testimony for impermissible reasons. First, the ALJ considered it "inconsistent" that plaintiff testified she suffered from both diarrhea and

Page 7 - OPINION AND ORDER

constipation. Tr. 28. The ALJ cited no authority for this "conflict," and the medical record supports plaintiff's claim she suffers from both. As stated by Dr. Kinsman, laxatives (cause of diarrhea) do not necessarily help constipation because the problem is with coordination of defecation rather than slow transit through the colon, though both may occur together. Tr. 696. Because it is possible to suffer from diarrhea and constipation at the same time, the ALJ erred in discrediting plaintiff's testimony on this basis.

Next, the ALJ concluded plaintiff exaggerated her symptom testimony by claiming use of the bathroom 18 times before 1:00 p.m. on a daily basis. The ALJ calculated this would mean plaintiff must continuously use the bathroom starting at 4:00 a.m. and do nothing else. Tr. 29. After careful review of the record, I conclude the ALJ seriously misunderstood plaintiff's testimony. During plaintiff's hearing, the ALJ kept insisting plaintiff quantify how many times she goes to the bathroom each day. Tr. 52-61. Plaintiff explained she did not keep track and that it was hard to state a number because it varied. Tr. 52-61. Plaintiff also stated that she was unclear what the ALJ meant when she was asking about "going to the bathroom" because during each visit to the bathroom, it took multiple attempts (involving getting on and off the toilet) to successfully produce a bowel movement. *See* Tr. 55 (asking whether the ALJ wanted to know "[h]ow many times do I go into the bathroom, or how many times do I sit on the toilet to go to the bathroom?"); Tr. 56 ("I can't understand the question as far as how many times do I go, or how many times do I go into the bathroom itself?"). The ALJ did not respond to this request for clarification.

Plaintiff has consistently stated she goes into the bathroom several times a day and during each visit she must make 12-18 attempts (i.e. from positions on the floor to the commode) to defecate. Tr. 106-107. This multiple attempt process takes at least 15 minutes and up to 50-60

minutes per session in the bathroom. The ALJ misinterpreted "12-18 times" in plaintiff's testimony as relating to visits to the bathroom instead of attempts to defecate on the commode.[4] Tr. 336. The ALJ clearly erred in finding plaintiff had testified she made 12-18 separate visits to the bathroom each day, and accordingly could not rest an adverse credibility finding on that ground.

The ALJ also found contradictions between plaintiff's reported daily activities and her alleged symptoms. Tr. 27, 29. The ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). The ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting or claimant engages in daily activities inconsistent with the alleged symptoms. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007). Plaintiff testified she did light cooking and laundry, went to the grocery store, wrote a children's novel, read, used the laptop, played cards, and went to the gym. Tr. 311-14. She was able to participate in these daily activities for short periods of time, if she felt up to them. She further stated that she limited her outings from home to under one hour because of the fear she might need to use the restroom. Tr. 302. Plaintiff's statements about her ability to engage in activities for limited periods of time are fully consistent with the alleged severity of her condition. In addition, to the extent the ALJ found activities of daily living inconsistent with 12-18 daily trips to the bathroom, that reasoning rests on a serious misinterpretation of plaintiff's testimony as explained above.

---

[4]The ALJ aggressively questioned plaintiff about this issue at the hearing and returned to it multiple times in the written decision denying benefits. Tr. 28-29, 54-58, 60-61, 68-69. This raises a serious concern that the ALJ's misunderstanding of plaintiff's statements about the frequency of her bathroom trips infected the entire credibility determination.

The ALJ asserted the plaintiff's course of action in providing "draft letter" for Dr. Kinsman's use showed plaintiff had been very proactive in obtaining disability benefits. Tr. 27. Further, the ALJ stated plaintiff's demonstrated ability to draft such a letter contradicts the plaintiff's allegation that she suffers from severe mental impairments that prevent all work. Tr. 27. Finally, the ALJ stated the plaintiff's denial at the hearing that she had made a [draft letter] for Dr. Kinsman's use, further eroded plaintiff's credibility. Tr. 27. It is important to remember that the claimant carries the initial burden of proving a disability. *Burch,* 400 F.3d at 679. The fact that plaintiff was proactive in gathering medical records, statements from her doctor, and information to show the specificity of her symptoms can reasonably be attributed to plaintiff gathering evidence to meet the burden of proving disability. It is unreasonable for the ALJ to discount plaintiff's credibility because she proactively pursued her case. Further, plaintiff plainly acknowledged she submitted a draft letter to Dr. Kinsman. *See* Tr. 101. (ALJ: "So did you do a draft of this RFC for Dr. Kinsman?" Plaintiff: "Yes, I did, your honor. Yes, I did.")[5] Therefore, the ALJ erred in concluding that plaintiff's active participation in collecting medical evidence eroded her credibility.

Finally, the ALJ determined that the fact that plaintiff did not follow through with the recommended physical therapy treatment undermined plaintiff's credibility in regards to her desire

---

[5]The ALJ's finding plaintiff had denied drafting the letter stems from yet another serious misinterpretation of plaintiff's testimony. Earlier in the hearing, the ALJ questioned the authenticity of the handwriting on a questionnaire filled out by Dr. Kinsman. The ALJ asked plaintiff if she was the one who filled out the questionnaire and then had Dr. Kinsman sign it. Plaintiff denied the accusation. Tr. 100. After the hearing, Dr. Kinsman backed up plaintiff's testimony, confirming in a separate letter that the questionnaire was in her handwriting and reflected her opinion. Tr. 695. The ALJ appears to have conflated plaintiff's denial about filling out the *questionnaire* with the later question about drafting the *letter*. That conflation is a good example of how the ALJ's conclusion plaintiff lied about her number of visits to the bathroom appears to have infected the entire credibility analysis.

to get better. Tr. 27. The ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" when assessing a claimant's credibility. *Tommasetti v. Astrue,* 533 F.3d at 1039 (9th Cir. 2008) (quoting *Smolen,* 80 F.3d at 1284). Plaintiff testified that she did not seek physical therapy because she knew it would not help resolve her "blockages." Tr. 99-100. She testified she knew there was "something more" going on. Tr. 120. According to the medical record, plaintiff continued to seek care from physicians, evidencing her continued efforts to resolve the alleged symptoms. Although, plaintiff did not initially participate in recommended physical therapy,[6] her explanation for not participating coupled with her continued effort to seek treatment renders the ALJ's reliance on this reason to discredit her testimony impermissible.

Even when the ALJ commits legal error, the decision will be upheld if the error is harmless. An error is harmless if it is "inconsequential to the ultimate non-disability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quotation marks omitted). I cannot conclude the errors here harmless. If plaintiff's testimony were credited as true, she certainly would be found disabled. Moreover, although the ALJ gave three permissible reasons to discredit plaintiff's symptom testimony, the majority of the reasons given by the ALJ were not acceptable. Finally, the record as a whole suggests the ALJ's entire credibility determination was infected by her belief plaintiff was lying about how often she uses the bathroom — and that belief, in turn, rested on a serious and unreasonable misinterpretation of plaintiff's testimony. Remand is necessary to permit wholesale reconsideration of whether to credit plaintiff's subjective symptom testimony.

---

[6]Plaintiff participated in physical therapy in January 2014 prior to her surgical procedure in February 2014.

## II.    Weighing Medical Evidence

Plaintiff contends the ALJ erred by failing to give controlling weight to the opinions of plaintiff's treating physicians, Dr. Kinsman and Dr. Osmundsen.  There are three types of medical opinions in social security cases:  treating physicians, examining physicians, and non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d).  To reject the uncontested opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  If the opinion is contradicted by another doctor's opinion, it may be rejected only for specific and legitimate reasons.  *Lester*, 81 F.3d at 830.  "The ALJ can meet this burden by setting out detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quotation marks omitted).

Regarding the diagnosis and treatment of pelvic and defactory dysfunction, Dr. Osmundson (gynocologist), Dr. Kinsman (gastroenterologist), Dr. Cavanaugh (gastroenterologist), and Dr. Bray (gastroenterologist) were treating and examining physicians.  The ALJ relied on Dr. Bray's opinion and gave significant weight to Dr. Cavanaugh's opinion.  Tr. 23, 27.  The ALJ discredited Dr. Osumundson's and Dr. Kinsman's opinions.  Tr. 26-28..

### A.    Lynn Osmundsen, M.D.

Dr. Osmundsen was plaintiff's long standing gynecologist, from 2005 until at least 2013. Tr. 414-506.  In 2011, Dr. Osmundsen diagnosed plaintiff with slow transit constipation and

Page 12 - OPINION AND ORDER

recommended a dynamic MRI or fecal dyfecography to rule out rectocele and enterocele. Tr. 455-57. In 2013, Dr. Osmundsen confirmed a diagnosis of rectocele and enterocele and recommended physical therapy to be followed by surgery. Tr. 463. Dr. Osmundsen signed a statement on June 17, 2013, prepared by plaintiff's attorney, confirming the diagnosis and recommending treatment. Tr. 692-93. In the statement, Dr. Osmundsen characterized plaintiff's defactory dysfunction as "well identified and severe." Tr. 692. She opined it would be "very difficult for Ms. Myrick to sustain an 8 hour work day with standard breaks" due to her "constant discomfort" and need to take several long trips to the bathroom each day." Tr. 692.

The ALJ stated that "Dr. Osmundsen's opinions [are conclusory and] accorded no weight." The ALJ gave little weight to the prepared statement, reasoning that because Dr. Osmundsen "did not record any of her own opinions and she merely endorsed subsequent opinions that are not supported by her own treatment notes," her evaluation of plaintiff's restrictions was unreliable. Tr. 28.

The ALJ's reasons for discounting Dr. Osmundsen's opinion are not legitimate. An ALJ may reject a treating physician's opinion if it is based "to large extent" on a claimant's self-reports that have been properly discounted as incredible. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair*, 885 F.2d at 605). As explained, however, the ALJ's credibility determination must be reconsidered on remand.

Further, an ALJ may reject a treating physician's opinion if the records reveal that they largely reflect the claimant's reports of pain, with little independent analysis or diagnosis or are based on the claimant's subjective comments concerning their condition. *Tommasetti*, 533 F.3d at 1041. If the statement Dr. Osmundsen signed stood alone, without accompanying treatment notes

Page 13 - OPINION AND ORDER

and records, it reasonably could be interpreted as conclusory. However, Dr. Osmundsen's treatment notes, spanning more than eight years, are consistent with the letter. These treatment notes show Dr. Osmundsen based her opinion on more than plaintiff's subjective symptom reports. For example, Dr. Osmundsen's treatment notes during this time refer to both subjective complaints ("plaintiff complained of constipation, abdominal pain, slow motility, difficulty with bowel movements, use of hand to assist with bowel movements") and objective findings ("discussing review of defecography studies showing rectocele and enterocele when she bears down"). Tr. 416, 455-56, 462. These notes are consistent with statements in the letter such as, "Ms. Myrick has developed enterocele and rectocele, confirmed by cystodefecography." Tr. 692. The ALJ erred by discrediting Dr. Osmundsen's medical opinion.

       *B.*     *Dr. Kirsten Kinsman, M.D.*

       Dr. Kinsman assumed care of plaintiff on September 14, 2012. Tr. 508. According to treatment notes, during plaintiff's initial office visit, Dr. Kinsman suspected severe chronic constipation, pelvic floor dysfunction, and rectocele. Tr. 508. Dr. Kinsman performed a cystodefecography on November 8, 2012, which confirmed her diagnosis of severe pelvic floor and defecatory dysfunction caused by posterior compartment prolapse, rectocele and enterocele and recommended physical therapy and surgery to alleviate the condition. Tr. 507. On December 13, 2012, Dr. Kinsman completed a questionnaire regarding plaintiff's condition and symptoms and concluded plaintiff suffered from "defecation obstruction which is severe." Tr. 207, 510-14. Furthermore, Dr. Kinsman submitted a handwritten statement to supplement the questionnaire. Tr. 695-98. In that statement, Dr. Kinsman states her opinion is based on "a combination of the objective findings . . . which support the severity of her subjective symptoms." Tr. 695. Dr.

Kinsman also concluded the "defecography findings support what [plaintiff] reports with regards to her evacuation ritual" and opined that "physical therapy will help with [plaintiff's] condition but will not likely resolve her symptoms as it will not change the posterior compartment prolapse." Tr. 696-97.

The ALJ accorded Dr. Kinsman's opinion minimal weight for three reasons. First, the ALJ explained that Dr. Kinsman left blank a line on the questionnaire regarding the frequency and length of contact she had with the plaintiff, giving rise to an inference that [plaintiff's] treatment relationship with Dr. Kinsman was minimal. Tr. 26. Because of this, the ALJ explained that "Dr. Kinsman's opinions that the plaintiff has severe physical limitations are accorded minimal weight." Tr. 27. This is an illegitimate reason for discounting Dr. Kinsman's opinion. The evidence in the medical record shows that Dr. Kinsman examined the plaintiff on September 14, 2012; performed a cystodefecography on the plaintiff on November 8, 2012; and diagnosed the plaintiff with rectocele and enterocele following the cystodefecography on November 12, 2012. This is sufficient evidence of a treatment history to make Dr. Kinsman, at the very least, an examining physician.

Second, the ALJ discounted the opinion of Dr. Kinsman because the ALJ believed plaintiff influenced Dr. Kinsman's opinion with her subjective reports. As explained, plaintiff's credibility with respect to her symptoms remains an open question. The ALJ also gave little weight to Dr. Kinsman's opinion because plaintiff prepared a "draft letter" summarizing plaintiff's symptoms and condition. Tr. 27. The ALJ apparently thought the letter deserved less weight because she believed it to be plaintiff's thoughts and not representative of Dr. Kinsman's clinical findings. Again, the evidence in the medical record does not support the ALJ's conclusion on this matter. There is no evidence in the record that the "draft" letter was used by Dr. Kinsman to prepare her findings. In

Page 15 - OPINION AND ORDER

fact, Dr. Kinsman expressly stated that the "draft" letter did not influence her opinion any more than plaintiff's comments and presentation in Dr. Kinsman's office. Tr. 695. Nor did the ALJ point to any evidence Dr. Kinsman stepped outside of a treating role to act as an advocate. *See Matney v. Sullivan,* 981 F.2d 1016, 1020 (9th Cir. 1992). It was unreasonable for the ALJ to reject Dr. Kinsman's adequately supported clinical findings simply because plaintiff prepared a draft statement regarding those findings.

Finally, the ALJ found a conflict between the opinion of Dr. Kinsman and the opinion of Dr. Megan Cavanaugh, M.D. The plaintiff was referred to Dr. Cavanaugh by Dr. Kinsman for pelvic floor dysfunction. Tr. 529. Dr. Cavanaugh noted that if plaintiff continued to strain with outlet obstruction she would continue to have problems with continued pelvic floor prolapse and referred her to pelvic floor physical therapy. Dr. Cavanaugh confirmed the diagnosis of rectocele and a significant enterocele and for this combined problem she referred her to a uro-gynecologist because plaintiff was seeking a "surgical fix." Tr. 532. She further stated that "unless she corrects her bowel movements she will only undo any surgical procedure attempted." Tr. 532.

The ALJ interpreted Dr. Cavanaugh's notes as suggesting conservative treatment (physical therapy) before an attempt at surgery. Tr. 27. The ALJ explained that the opinion of Dr. Cavanaugh, a specialist, is accorded more weight than the opinion of Dr. Kinsman. Tr. 27. Furthermore, the ALJ stated that Dr. Cavanaugh's treatment notes provided no evidence, other than by the plaintiffs self-report, that she needs significant breaks during work, or needs to be on "all fours" in order to evacuate. Tr. 28.

After careful review of the relevant portions of the record and the ALJ's opinion, I conclude the ALJ erred in using Dr. Cavanaugh's opinion to discredit Dr. Kinsman's opinion. First, it was

unreasonable to give more weight to Dr. Cavanaugh's opinion because she is an examining source and a specialist, because Dr. Kinsman is also a specialist and an examining source.  In fact, Dr. Cavanaugh had less interaction with the plaintiff, only meeting with her once, compared to Dr. Kinsman who had multiple encounters with the plaintiff.  Second, the ALJ's assertion that the plaintiff did not mention to Dr. Cavanaugh her need to be on "all fours" in order to evacuate was incorrect.  According to Dr. Cavanaugh's treatment notes dated April 24, 2013, the plaintiff stated that, "She will lay on the bathroom floor and put her legs up and has to wait until the feeling is appropriate and then she will either get up on all fours or she will get up and sit on the toilet but only a small amount comes out and . . . she does the process over and over all day long." Tr. 529.  Lastly, Dr. Cavanaugh's opinion does not actually conflict with Dr. Kinsman's opinion.  Dr. Cavanaugh's diagnosis tracks Dr. Kinsman's.  Although Dr. Cavanaugh stressed the need for plaintiff to participate in physical therapy in order to ensure surgery would be successful, she never said surgery was unnecessary or inappropriate.  The ALJ erred by discrediting the medical opinion of Dr. Kinsman.

   C.    *Dr. Harry Bray, M.D.*

   Plaintiff was referred to a gastroenterology specialist, Dr. Bray, in September 2011.  Tr. 358-59, 387.  At Dr. Bray's recommendation, plaintiff underwent a colonoscopy to rule out colorectal disease, with normal results.  Tr. 614.  In June 2012, Dr. Bray performed a Sitzmarks[7] test which yielded normal results as well.  Tr. 590.  Dr. Bray diagnosed constipation predominant irritable bowel syndrome.  Tr. 590.

---

   [7]Sitzmarks test is performed to measure the rough transit time through the colon.  A capsule with tiny plastic rings is swallowed and X-rays are taken at day 1, 3, and 5.  The radiologist counts how many rings are left after each X-ray.  Tr. 698.

The ALJ relied heavily on Dr. Bray's opinion in finding plaintiff's condition non-severe. Dr. Bray noted "some pelvic floor dysfunction," but opined "it does not seem major." Dr. Bray recommended Kegel exercises and concluded, "No further follow-up required." Tr. 23. Plaintiff alleges that although Dr. Bray performed the colonoscopy and Stizmarks test, he did not otherwise physically examine her. Tr. 94.

Dr. Kinsman examined and diagnosed the plaintiff after Dr. Bray's treatment and conducted an alternative test in regards to diagnosis. Tr. 695-98. According to Dr. Kinsman's report, a normal Stizmark test does not exclude the possibility of pelvic floor dysfunction. Tr. 698. Further, Dr. Kinsman performed the cystodefecography on November 8, 2012, diagnosing plaintiff with rectocele and enterocele after her treatment with Dr. Bray. Tr. 518. Dr. Kinsman noted that pelvic floor dysfunctions are not diagnosable through a colonoscopy and therefore performed the cystodefecography, which is useful to diagnose pelvic floor dysfunctions. Tr. 510. Both Dr. Bray and Dr. Kinsman suggested physical therapy would be helpful. Tr. 590, 697. Therefore, it is not clear to what extent Dr. Bray's opinion actually conflicts with Dr. Kinsman's opinion. Even assuming such a conflict exists, as explained above, the ALJ has not provided specific, legitimate reasons for rejecting Dr. Kinsman's opinion and crediting Dr. Bray's opinion instead.

*III.    Severe Impairments*

Plaintiff challenges the ALJ's failure to find pelvic floor dysfunction, rectocele, and enterocele medically determinable and severe impairments. At step two of the disability determination:

> The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the Commissioner's regulations, "an impairment is not severe if it does

not significantly limit [the plaintiff's] physical ability to do basic work activities[.]"
*Smolen*, 80 F.3d at 1290 (quoting 20 C.F.R. §§ 401.1520(c), 404.1521(a)).  Step two is a "de minimis screening device to dispose of groundless claims." *Id.*  As a result, a finding of "not severe" is appropriate "only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id.* (quoting SSR 85-28).  To support finding an impairment not severe, the ALJ must (1) carefully evaluate the medical findings that describe the impairment, which include "the objective medical evidence and any impairment-related symptoms"; and (2) make "an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3P.

In this case, the ALJ found rectocele and enterocele medically indeterminable because they were not diagnosed until November 2012, ten months after plaintiff's date last insured.  Tr. 23. Further, the ALJ determined plaintiff's symptoms had no more than a minimal effect on her ability to work because plaintiff stated she has "no problem" with activities of self-care, including dressing, bathing, caring for hair, and feeding.  Tr. 24.  Lastly, the ALJ reasoned that even after diagnosis, rectocele and enterocele were non-severe, as evidenced by Dr. Bray recommending physical therapy only, and not surgery. Tr. 23.

The ALJ erred by failing to consider the medical evaluations made after the expiration of plaintiff's insured status as relevant.  The Ninth Circuit has explicitly stated that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Taylor v. Comm'r of Soc. Sec. Admin.,* 659 F.3d 1228, 1232 (9th Cir. 2011) (quoting *Lester*, 81 F.3d at 832).  Review of plaintiff's medical history shows evidence of

Page 19 - OPINION AND ORDER

symptoms relating to her alleged condition were discussed with Dr. Osmundson, a treating physician, before her date last insured, at which time Dr. Osmundson diagnosed plaintiff with slow transit constipation and recommended further tests to rule out rectocele or enterocele. Tr. 455-57. Dr. Kinsman later opined the diagnosis of rectocele and enterocele, as evidenced in the defecography results, supported the severity of plaintiffs subjective symptoms. Tr. 696. The ALJ impermissibly excluded plaintiff's rectocele and enterocele at step two based on the date of diagnosis.

The ALJ also erred by finding the plaintiff's alleged condition non-severe due to the ability of plaintiff to perform self-care activities. The ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter,* 504 F.3d at 1040. However, plaintiff's ability to care for herself is not inconsistent with the alleged symptoms. Plaintiff testified that although she is able to cook, bathe, and occasionally go to the store, she can only do such activities for short periods of time to ensure close proximity to the bathroom. Tr. 680. That testimony is fully consistent with her symptom testimony.

Finally, I am unable to determine whether the ALJ erred at step two based on Dr. Bray's recommendation of physical therapy and not surgery because of the errors regarding the weight placed on the evidence of treating physicians and the evaluation of plaintiff's credibility. On remand, the ALJ must revisit the step two determination in light of the properly weighed medical evidence.

*IV.    Remand for Further Proceedings*

The "ordinary remand rule" requires a court to remand for further proceedings unless a certain set of criteria are met. *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1099 (9th Cir. 2014). In this case, remand for further proceedings is the correct course because I cannot

conclude "further administrative proceedings would serve no useful purpose." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

First, as explained, the ALJ relied on a combination of permissible and impermissible factors to discredit plaintiff's subjective symptom testimony.  I cannot conclude the credibility analysis errors were harmless because the record strongly suggests the ALJ determined plaintiff was testifying dishonestly based on a serious misinterpretation of plaintiff's testimony.  Nonetheless, the presence of the permissible credibility considerations weighs in favor of remand for further proceedings.

Second, plaintiff submitted a motion to supplement the record and has amended her application to request a closed disability period.  The court may remand the case to the Commissioner for further action upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g), sentence six. Plaintiff has the burden of demonstrating materiality and good cause. *Mayes,* 276 F.3d at 462.  "To be material under section 405(g), the new evidence must bear directly and substantially on the matter in dispute." *Id.* (quotation marks omitted). Plaintiff must additionally demonstrate that there is a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing. *Id.* (quotation marks omitted).

Plaintiff seeks to supplement the record with evidence of two procedures that were performed to correct her rectocele and enterocele.  The first was a robotic sacrocolpopexy, posterior repair, cystoscopy and laaprascopic lysis of adhesions performed in February 2014.  Plaintiff alleges this procedure did not restore sufficient bowel function.  In March 2015, plaintiff was diagnosed with outlet obstruction/internal intussusception, and underwent a Delorme procedure.  Plaintiff alleges

Page 21 - OPINION AND ORDER

as a result of these procedures, her symptoms have abated at a degree that will permit her to work. This additional evidence is material and should be considered on remand.

## CONCLUSION

The decision of the Commissioner is REVERSED and REMANDED for further proceedings. On remand, the ALJ must (1) reconsider plaintiff's testimony regarding the severity of her symptoms; (2) re-weigh the medical evidence, specifically the opinions of Dr. Osmundsen and Dr. Kinsman; (3) at step two, determine whether rectocele and enterocele are medically determinable and severe impairments; and (4) re-formulate the RFC as necessary.

IT IS SO ORDERED.

Dated this 27 day of ~~July~~ June 2016.

_____
Ann Aiken
United States District Judge

Page 22 - OPINION AND ORDER